UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | |
|---|---|
| BRENDA C. NOE, on behalf of herself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>CITY NATIONAL BANK OF WEST VIRGINIA,<br><br>　　　　　　Defendant. | Civil Action No. 3:19-cv-00690<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Brenda C. Noe, on behalf of herself and all persons similarly situated alleges the following based on personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations.

## INTRODUCTION

1.　Plaintiff brings this action on behalf of herself and a class of all similarly situated consumers against Defendant City National Bank of West Virginia ("City National" or "Bank") arising from the Bank's routine practice of assessing more than one non-sufficient funds fee ("NSF Fee") of $36.00 on the same item.

2.　This practice breaches contractual promises; violates the covenant of good faith and fair dealing; and/or results in the Bank being unjustly enriched.

3.　City National's customers have been injured by the Bank's improper practices to the tune of millions of dollars bilked from their accounts in violation of their agreements with City National.

4. On behalf of herself and the Class, Plaintiff seeks damages, restitution, and injunctive relief for Defendant's violations as set forth more fully below.

## PARTIES

5. Brenda C. Noe is a resident of Glenwood, West Virginia (Mason County), and holds a City National checking account.

6. Defendant City National is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Class. City National has $4.8 billion in assets and provides banking services to customers through 97 bank branches in the states of Kentucky (22 branches), Ohio (4 branches), Virginia (13 branches), and West Virginia (58 branches). City National is the second largest bank in West Virginia based on total deposits. City National is headquartered in Charleston, West Virginia and operates banking centers throughout the State of West Virginia, including in Huntington and Milton, West Virginia, and thus conducts business within this District.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed class is comprised of at least 100 members; (2) proposed class members reside in at least four states, meaning at least one member of the proposed class resides outside of West Virginia; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because City National is subject to personal jurisdiction here and regularly conducts business in this District,

and because a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I. CITY NATIONAL CHARGES MORE THAN ONE NSF FEE ON THE SAME ITEM

9. As alleged herein, City National's "TERMS AND CONDITIONS OF YOUR ACCOUNT" ("Terms and Conditions") and its Fee Schedule convey to customers that a *single* $36 NSF Fee will be assessed when an item, including an electronic payment item, is returned for insufficient funds.

10. For example, the Terms and Conditions inform a customer:

> If another transaction is presented for payment in an amount greater than the funds left after the deduction of the temporary hold amount, that ***transaction*** will be a nonsufficient funds (NSF) transaction if we do not pay it or an overdraft transaction if we do pay it. You will be charged ***an NSF or overdraft fee*** according to our NSF or overdraft fee policy.

*See* Terms and Conditions, p. 2 (emphasis added) (**Exh. A** hereto).

11. City National's Fee Schedule establishes that a $36 fee will be charged for either an "Non-Sufficient Funds (NSF) or overdraft fee" per item. *See* Fee Schedule (**Exh. B** hereto).

12. City National breaches its contract when it charges more than one $36 NSF Fee on the same item, since the contract states—and reasonable consumers understand—that the same item can only incur a single NSF Fee.

13. This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not charge more than one NSF Fee on the same item when it is reprocessed. Instead, Chase charges one NSF Fee even if an item is resubmitted for payment multiple times.

14. City National's Terms and Conditions never disclose this practice. To the contrary, the Terms and Conditions indicate it will only charge a single NSF Fee on an item.

A. **Plaintiff Noe's Experience.**

15. Ms. Noe has been assessed multiple fees that should not have been assessed against her checking account. As alleged below, City National reprocessed a previously declined transaction additional times in order to assess *multiple fees on a single item*.

16. In July 2018, Ms. Noe attempted an electronic payment to Cashland in the amount of $52.10.

17. City National rejected payment of that transaction due to insufficient funds in Plaintiff's account and charged her a $36 NSF Fee for doing so. Plaintiff does not dispute the initial fee, as it is allowed by City National's Terms and Conditions.

18. Unbeknownst to Plaintiff, and without her request to City National to reprocess the item, however, weeks later, on August 8, 2018, City National processed the same transaction yet again, which City National referred to as a "RETRY PYMT" on Plaintiff's statement.

19. Again City National rejected the transaction due to insufficient funds and charged Plaintiff *another* $36 NSF Fee.

20. Unbeknownst to Plaintiff, and without her request to City National to reprocess the item, on August 22, 2018, City National processed the same transaction yet again – and again referred to the item as a "RETRY PYMT".

21. And again, City National rejected the transaction due to insufficient funds and charged Plaintiff *yet another* $36 NSF Fee for doing so.

22. *In sum, City National assessed Plaintiff $108 in NSF Fees based on a single payment of $52.10.*

23. Ms. Noe's payment to Cashland was a single transaction as is laid out in City National's contractual documents, capable at most of receiving a single NSF Fee (if City National returned it) or an overdraft fee (if City National paid it).

24. On May 6, 2019, Ms. Noe attempted a payment to Wal-Mart in the amount of $25.13.

25. City National rejected payment of this transaction due to insufficient funds in Plaintiff's account and charged her a $36 NSF Fee for doing so. Once again, Plaintiff does not dispute this initial NSF Fee, as it is allowed by City National's Terms and Conditions.

26. Unbeknownst to Plaintiff, and without her request to do so, City National reprocessed the same item a week later on May 13, 2019. This transaction, like the Cashland example above, was also designated as a "RETRY PYMT" on Plaintiff's statement.

27. Again City National rejected the transaction due to insufficient funds and charged Plaintiff *another* $36 NSF Fee.

28. Unbeknownst to Plaintiff, and without her request to do so, City National reprocessed the item a third time (another "RETRY PYMT") ten days later on May 24, 2019.

29. Yet again City National rejected the transaction due to insufficient funds and charged Plaintiff *a third* $36 NSF Fee for doing so.

30. Unbeknownst to Plaintiff, and without her request to do so, City National reprocessed the item a fourth time on June 7, 2019.

31. Yet again City National rejected the transaction due to insufficient funds and charged Plaintiff *a fourth* $36 NSF Fee for doing so.

32. Unbeknownst to Plaintiff, and without her request to do so, City National reprocessed the item a fifth time two weeks later on June 21, 2019.

33. Yet again City National rejected the transaction due to insufficient funds and charged Plaintiff *a fifth* $36 NSF Fee for doing so.

34. *In sum, City National assessed Plaintiff $180 in NSF Fees based on a single payment of $25.13.*

### B. The Imposition of Multiple NSF Fees on a Single Transaction Also Violates City National's Online Representations.

35. Beyond the language found in the Terms and Conditions and Fee Schedule, City National's online disclosures also inform customers that only a singular NSF Fee can be assessed on checks, ACH debits, and electronic payments.

36. City National's website informs its account holders:

> If you write a check or make a recurring payment for more money than you have in your account, City will return the item unpaid and a $36 NSF fee will be assessed against your account.

37. Thus City National does not provide any information to its customers that would inform them that a single check or single recurring payment becomes a new item each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item.

38. There is zero indication anywhere in the Terms and Conditions, the Fee Schedule, or the City National website that informs its customers that the same check or recurring payment could possibly incur multiple NSF Fees.

39. Even if City National reprocesses an instruction for payment, it is still the same check or recurring payment. The Bank's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

40. Indeed, the language noted above makes clear that it is the action of the accountholder, and only the accountholder, that creates an item: *"If you write a check or make a*

6

*recurring payment. . .*" As alleged herein, Plaintiff took only a single action to make a single payment; she may therefore be charged only a single fee.

41. Moreover, by expressly linking overdraft fees and NSF Fees in the Fee Schedule, City National bolsters the reasonable assumption that only a single fee can be assessed on an item. Here's why: For an item charged an "overdraft fee" and thus paid into overdraft, there is no chance it can be subject to reprocessing and thus no chance it could be subject to a second or third fee, since it has already been paid. No reasonable contract reading could allow the *other* fee mentioned in the disclosure—the NSF Fee—to be treated so differently and assessed two or three times on the same item.

42. The disclosures described above never discuss a circumstance where City National may assess multiple NSF Fees for an item that was returned for insufficient funds and later reprocessed one or more times and returned again (incurring an NSF Fee).

43. In sum, City National promises that one $36 NSF Fee will be assessed per check or recurring payment, and these terms must mean all iterations of the same instruction for payment. As such, City National breached the contract when it charged more than one fee per item.

44. Reasonable consumers understand any given authorization for payment to be one, singular check or recurring payment as those terms are used in City National's Terms and Conditions.

45. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which the Bank will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does City

National disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do City National customers ever agree to such fees.

46. Customers reasonably understand that the Bank's reprocessing of checks or recurring payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF Fee. In other words, it is always the same item.

47. Banks like City National that employ this abusive multiple fee practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Defendant here never did.

48. For example, First Hawaiian Bank engages in the same abusive practices as Defendant, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

49. Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

50. City National provides no such disclosure, and in so doing, deceives its accountholders.

### C. The Imposition of Multiple NSF Fees on a Single Transaction Breaches City National's Duty of Good Faith and Fair Dealing.

51. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that the Bank is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the Bank has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties. Here—in the adhesion agreements City National foisted on Plaintiff and its other customers—City National has provided itself numerous discretionary powers affecting customers' bank accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the Bank abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

52. City National abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Terms and Conditions. This is a breach of the Bank's implied covenant to engage in fair dealing and act in good faith.

53. City National does not disclose that a single item may be charged multiple NSF Fees, but it is the Bank's standard policy to always to do, multiple times on the same item. This is an abuse of discretion.

9

54. By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one NSF Fee on a single item, City National breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

55. It was bad faith and totally outside Plaintiff's reasonable expectations for City National to use its discretion to assess multiple NSF Fees for a single attempted payment.

## **CLASS ACTION ALLEGATIONS**

56. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated pursuant to Federal Rule 23. The Class includes:

> All persons who, within the applicable statute of limitations period, were charged multiple NSF Fees for a single transaction in a City National checking account (the "Multiple NSF Fee Class").

57. Excluded from the Class are Defendant, Defendant's subsidiaries and affiliates, their officers, directors, and the members of their immediate families, and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

58. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add subclasses if necessary before this Court determines whether certification is appropriate.

59. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual class members because City National

has acted on grounds generally applicable to the Class. Such common legal or factual questions include, but are not limited to:

  a)   Whether City National improperly charged more than one NSF Fee on the same item;

  b)   Whether City National's conduct violates the contract;

  c)   Whether City National's conduct violates the covenant of good faith and fair dealing;

  d)   Whether City National's conduct constitutes unjust enrichment;

  e)   The appropriate measure of damages.

  60.  The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consist of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to City National's records. City National has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

  61.  It is impracticable to bring members' of the Class individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

  62.  Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by City National, as described herein.

63. Plaintiff is more than an adequate representative of the Class in that Plaintiff has a City National checking account and has suffered damages as a result of City National's contract violations, City National's violations of the covenant of good faith and fair dealing, and City National's unjust enrichment. In addition:

   a) Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

   b) There is no conflict of interest between Plaintiff and the unnamed members of the Class;

   c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

   d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

64. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

65. City National has acted or refused to act on grounds generally applicable to each of the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

66. All conditions precedent to bringing this action have been satisfied and/or waived.

### CAUSES OF ACTION

#### COUNT I
#### BREACH OF CONTRACT AND BREACH OF THE
#### COVENANT OF GOOD FAITH AND FAIR DEALING
#### (On Behalf of Plaintiff and the Class)

67. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Petition as if fully set forth herein.

68. Plaintiff and City National contracted for checking account services, as embodied in the Terms and Conditions and Fee Schedule.

69. City National breached the terms of the Terms and Conditions and Fee Schedule.

70. Plaintiff and members of the putative Class have performed all of the obligations on them pursuant to the Bank's Terms and Conditions and Fee Schedule.

71. Plaintiff and members of the putative Class have sustained monetary damages as a result of each of Defendant's breaches.

72. Plaintiff and City National contracted for checking account services, as embodied in the Terms and Conditions and Fee Schedule.

73. All of the relevant states (with the possible exception of Texas) mandate that an implied covenant of good faith and fair dealing govern every contract. For banking transactions, this is also mandated by the Uniform Commercial Code that has been adopted in each state. The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

74. This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

75. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

76. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

77. City National breached the covenant of good faith and fair dealing as explained herein.

78. Each of Defendant's actions was done in bad faith and was arbitrary and capricious.

79. Plaintiff and members of the putative Class have performed all of the obligations imposed on them pursuant to the Terms and Conditions.

80. Plaintiff and members of the putative Class have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

**COUNT II
UNJUST ENRICHMENT
(In the Alternative to COUNT I)
(On Behalf of Plaintiff and the Class)**

81. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Petition as if fully set forth herein.

82. This Count is brought solely in the alternative. Plaintiff acknowledges that his breach of contract claim cannot be tried along with unjust enrichment.

83. To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

84. Plaintiff and the Class conferred a benefit on Defendant when they paid Defendant the fees that were not disclosed or allowed for in the in the Terms and Conditions and Fee Schedule.

85. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

86. Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a jury trial on all claims so triable and judgment as follows:

A. Certifying the proposed Class pursuant to Federal Rule of Civil Procedure 23, appointing the Plaintiff as representative of the Class, and appointing counsel for Plaintiff as lead counsel for the respective Class;

B. Declaring that Defendant's policies and practices as described herein constitute a breach of contract and a breach of the covenant of good faith and fair dealing or unjust enrichment;

C. Enjoining Defendant from the wrongful conduct as described herein;

D. Awarding restitution of all fees at issue paid to Defendant by Plaintiff and the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

E. Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

F. Awarding actual and/or compensatory damages in an amount according to proof;

G. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

H.	Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

I.	Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: September 20, 2019.

Respectfully submitted,

By:	/s/ Jason E. Causey
James G. Bordas III #8518
Jason E. Causey #9482
BORDAS & BORDAS, PLLC
1358 National Road
Wheeling, WV 26003
(304) 242-8410
jbordasIII@bordaslaw.com
jcausey@bordaslaw.com

E. Adam Webb*
G. Franklin Lemond, Jr.*
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E., Suite 480
Atlanta, GA 30339
(770) 444-0773
Adam@WebbLLC.com
Franklin@WebbLLC.com

Tiffany M. Yiatras*
Francis J. "Casey" Flynn, Jr.*
CONSUMER PROTECTION LEGAL, LLC
308 Hutchinson Road
Ellisville, MO 63011
tiffany@consumerprotectionlegal.com
casey@consumerprotectionlegal.com

*Attorneys for Plaintiff*
\* *Pro hac vice* application to be promptly filed