**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

**BRENDA C. NOE, on behalf of herself
and all others similarly situated,**

        **Plaintiff,**

**v.**                                  **Civil Action No: 3:19-cv-00690**
                                        **Honorable Robert C. Chambers**

**CITY NATIONAL BANK OF WEST
VIRGINIA,**

        **Defendant.**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS,
MOTION TO STAY, AND TO STRIKE CLASS ACTION ALLEGATIONS**

**I. FACTUAL BACKGROUND**

This case involves Non-Sufficient Funds ["NSF"] fees Plaintiff was charged pursuant to a depository agreement she had with City National Bank of West Virginia.

For example, in July 2018, Plaintiff made an electronic payment to Cashland for $52.10.[1] City National rejected the payment due to insufficient funds in her account and charged her a $36 NSF fee.[2] Plaintiff does not dispute the initial NSF fee for her Cashland transaction because it is allowed by the terms of her depository agreement.[3]  Later, at Cashland's request, City National then reprocessed this attempted payment on August 8 (an "item" as defined in the depository agreement) and 22 (an "item" as defined in the depository agreement), 2018.[4]  Each time City National processed and rejected Plaintiff's attempted payment to Cashland due to insufficient

---

[1] Amended Complaint at ¶ 16.

[2] Amended Complaint at ¶ 17.

[3] Amended Complaint at ¶ 17.

[4] Amended Complaint at ¶¶ 18, 20.

funds upon submission of a separate "item" as defined in the depository agreement, it charged her a $36 NSF fee as per her depository agreement.[5]

On May 6, 2019, in the other example of NSF fees in her Amended Complaint, Plaintiff made a payment to Walmart for $25.13.[6] City National rejected payment of this transaction due to insufficient funds in her account and charged her a $36 NSF fee.[7] Again, Plaintiff does not dispute this initial NSF fee.[8] Later, per Walmart's requests in four separate "items" as defined in her depository agreement, City National reprocessed this attempted payment on May 13, and 24, and June 7, and 21, 2019.[9] Again, each time, City National processed and rejected Plaintiff's attempted payment to Walmart, it charged her a $36 NSF fee for each "item" as per her agreement.[10]

Ignoring the plain language of the depository agreement applicable to her account and the legal right of payees to resubmit rejected payments for reprocessing for which she has not issued a stop payment, Plaintiff complains that City National does not inform customers that a "single check or single recurring payment becomes a new item each time it is rejected for payment then reprocessed, especially when – as here – Plaintiff took no action to resubmit them."[11] According to Plaintiff, she took only a single action to make a single payment and, therefore, may be charged only a single fee[12] and City National breached the contract when it charged more than one fee.[13]

---

[5] Amended Complaint at ¶¶ 19, 21.

[6] Amended Complaint at ¶ 24.

[7] Amended Complaint at ¶ 25.

[8] Amended Complaint at ¶ 25.

[9] Amended Complaint at ¶¶ 26, 28, 30, 32.

[10] Amended Complaint at ¶¶ 27, 29, 31, 33.

[11] Amended Complaint at ¶ 37.

[12] Amended Complaint at ¶ 40.

[13] Amended Complaint at ¶ 42, 43.

These allegations, on their face, state no cause of action because they are directly contrary to the plain language of her depository agreement and, moreover, her suit is barred as she agreed to arbitrate any disputes against City National and waived any right to class action relief.

At the outset, City National notes that Plaintiff's Amended Complaint fails to correctly state how Plaintiff's checking account transactions were processed by City National according to her banking records.[14]  For example, Plaintiff initiated an ACH $52.10 payment with Cashland. Plaintiff's Amended Complaint states that this payment presented against Plaintiff's account first in **July 2018**.  City National has no record of that attempt in July 2018 (or July 2017).  Instead, on **August 8, 2017**, the ACH item was presented by Cashland for payment against Plaintiff's account, but she had a negative balance; therefore, the item was returned unpaid, which is evidenced as a credit to the account. Plaintiff's account was then debited for the NSF fee in accordance with the overdraft provisions of her depository agreement and federal law for that "item," separately processed by City National when it was presented for payment by Cashland. Cashland, not City National, then again attempted to secure payment two weeks later, on August 22, 2017, **with a different transaction number**; again, the ACH "item" was returned in a separate transaction initiated by Cashland, not City National, and Plaintiff's account was debited for the NSF fee in accordance with the overdraft provisions of her depository agreement and federal law.[15]

---

[14] Exhibit 1.

[15] Importantly, none of the transactions identified in Plaintiff's Amended Complaint were initiated by City National, including the ones by Walmart; instead, all were initiated by the payees of those transactions over which City National had no control.  Plaintiff does not allege that she did not authorize Cashland or Walmart to initiate the debits or that she reported any of them to City National as unauthorized. To the contrary, Plaintiff acknowledges in her Amended Complaint that she made the payments to Cashland and Walmart.  Under the applicable federal law, in the absence of a stop payment order, Cashland was then authorized to resubmit Plaintiff's ACH payment two more times, and Walmart was permitted to re-represent Plaintiff's payment twice as an ACH payment and twice as an electronic check payment.  See Federal Reserve Banks, Operating Circular No. 3, Collection of Cash Items and Returned Checks § 3.1(f) (if an "item has been dishonored two or more times," it will not be handled as a cash item); NACHA, ACH Rules Subsection 2.12.4.1 ("An Originator . . . may reinitiate an Entry . . . that was previously returned, only if .

In addition to referencing transactions that appear nowhere in her records, Plaintiff's Amended Complaint also fails to attach and reference the correct depository agreement and contractual provisions that govern her checking account, including NSF fees and arbitration.

Plaintiff opened an account at City National on July 27, 2012, and the depository documents applicable to that account are not the depository documents attached to and referenced in the Amended Complaint.[16]   The NSF fee provision of Ms. Noe's 2012 depository account agreement, which is the one which governed the Cashland and Walmart payments,[17] provided, "Non-sufficient Funds (NSF) or overdraft per item:  $36.00 per item; the fee applies to overdrafts 'created by check, in-person withdrawal, ATM withdrawal, or other electronic means, or items not paid due to the Bank's Funds Availability policy,' as applicable."[18]  This language imposed a "$36.00 per item" fee for as many "overdrafts" as "created by check, in-person withdrawal, ATM withdrawal, or other electronic means, or items not paid due to the Bank's Funds Availability

---

. . the Entry was returned for insufficient or uncollected funds . . . The Originator . . . must reinitiate the Entry within 180 days after the Settlement Date of the original Entry.  An Originator . . . may Reinitiate an Entry that has been returned for insufficient or uncollected funds a maximum of two times following the Return of the original Entry.")  Moreover, not only would it have violated the laws and rules applicable to checks and ACH transactions, had City National not processed these resubmissions, Plaintiff could have been charged with a crime, see W. Va. Code § 61-3-39, and City National could be held liable if sufficient funds were in Plaintiff's account on resubmission, see W. Va. Code 46-4-402(a),

[16] Exhibit 2 at Exhibit A.

[17] In December 2017, Ms. Noe, along with all checking account customers of City National, received the notice of change. The 2017 notice of change did not modify the NSF fee or arbitration provisions of Plaintiff's 2012 depository account agreement.  The purpose of the changes, as reflected in the 2017 notice of change was "to address the Military Lending Act revision . . . and several other revisions," but did not include "any fee increases or changes to fees that may be associated with your deposit account."  The 2017 notice of change also contained provisions that were applicable to the different states in which City National Bank of West Virginia does business and has customers with depository accounts. On July 1, 2019, Ms. Noe closed her 2012 checking account with City National.  That same day, July 1, 2019, Ms. Noe opened a different checking account with City National Bank and received a new set of depository agreement documents.  None of the NSF charges in Ms. Noe's amended complaint, which were assessed prior to July 1, 2019, were subject to her 2019 depository agreement's NSF provisions, but were subject to her 2012 depository agreement's NSF provisions.  Exhibit 1 at Exhibits B, C, and D.

[18] Exhibit 2.

policy."[19]  If a single "check, in-person withdrawal, ATM withdrawal, or [debit by] other electronic means" created multiple "overdrafts" as stated in the NSF fee provisions of Plaintiff's 2012 depository agreement because a merchant, for example, resubmitted the transaction for payment, then a "$36.00 per item" fee could be imposed for each overdraft.[20]  Finally, the term "**Items**" is expressly defined in Plaintiff's depository agreement to "**include all orders and instructions for the payment . . . of funds from your account**."[21]

Again, the language of Plaintiff's 2012 depository agreement could not be clearer: The $36.00 fee applies to "overdrafts" in the plural created by "check, in-person withdrawal, ATM withdrawal, or other electronic means" in the singular, which are each "items" or "all orders and instructions for the payment . . . of funds from your account."

When Plaintiff made a payment to Cashland that was rejected because she was overdrawn, Cashland had the legal right, which it exercised, to re-present it to City National, with a different item number, for payment.  When Cashland's re-presentment was rejected again because Plaintiff

---

[19] Exhibit 2.

[20] Exhibit 2.  The Amended Complaint quotes language from the wrong depository agreement documents that does not address overdraft fees, but addresses "[a] temporary debit authorization," which as explained in the agreement attached to the Amended Complaint, happens when merchants "request a temporary hold on your account for a specific sum of money, which may be more than the actual amount of your purchase" when using a debit card.  Amended Complaint at Exhibit A, p. 3 of 21.   None of the transactions referenced in the Amended Complaint were as a result of a "temporary debit authorization" and, therefore, the provision has no application to those transactions.  Moreover, as that provision of the agreement relative to "temporary debit authorizations" clearly states, "You will be charged an NSF or overdraft fee in accordance with our NSF or overdraft fee policy," id., and the fee schedule attached to the Amended Complaint clearly provides that Plaintiff would be charged $36 "per item," which is defined consistent with federal law as follows:  "Fee applies to overdrafts created by check, in-person withdrawal, ATM withdrawal or other electronic means."  Amended Complaint at Exhibit B.  In other words, it permits an overdraft fee to be charged each time a payee requests payment of a rejected transaction and over which, as noted, City National has no control.

[21] Exhibit 1 at Exhibit A (emphasis supplied).  "Examples include by check, draft recurring and one-time debit card transactions, ATM (automated teller machine) transactions, automated clearing house (ACH) transactions, reauthorized payments, automatic transfers, internal transfers, in person withdrawals and online transfers or bill payments."  Id.

was still overdrawn and another "overdraft" was created, City National had the contractual right to charge another $36.00 for that "item" or "order" for payment."  Similarly, Walmart as payee had the legal right, which it exercised, to re-present Plaintiff's payments rejected because she was overdrawn, and City National had the contractual right to charge another $36.00 for each "item."[22]

This explains why, to the best of City National's knowledge and belief, no other customer of City National has reported misunderstanding that a "$36.00 per item" fee will be charged for as many "overdrafts" as may be "created by check, in-person withdrawal, ATM withdrawal, or other electronic means" when those transactions are re-presented to City National for payment.[23]

Finally, the Arbitration provision of Plaintiff's 2012 depository agreement in effect at the time of the Cashland and Walmart transactions, provides: "YOU MAY BE REQUIRED TO SETTLE A CLAIM OR DISPUTE THROUGH ARBITRATION, EVEN IF YOU PREFER TO LITIGATE SUCH CLAIMS IN COURT.   YOU ARE WAIVING YOUR RIGHT TO PARITICPATE IN A CLASS ACTION LAWSUIT, CLASS ACTION ARBITRATION OR OTHER REPRESENTATIVE ACTION WITH RESPECT TO SUCH CLAIMS."[24]

Based upon Plaintiff's factual allegations, her Amended Complaint attempts to set forth individual and class causes of action for (1) breach of contract and the covenant of good faith and

---

[22] *See, e.g., Stauffer Seeds, Inc. v. Nebraska Sec. Bank*, 222 Neb. 594, 386 N.W.2d 2 (1986) ("A check returned for insufficient funds can be re-presented to the payor bank and upon such re-presentment is still a demand item subject to the midnight deadline rule. *See Graubart v. Bank Leumi Trust*, 48 N.Y.2d 554, 399 N.E.2d 930, 423 N.Y.S.2d 899 (1979)."); W. Va. Code § 46-4-402 (a) ("Except as otherwise provided in this article, a payor bank wrongfully dishonors an item if it dishonors an item that is properly payable, but a bank may dishonor an item that would create an overdraft unless it has agreed to pay the overdraft"); *United States Fidenlity & Guarantee Co. v. Home Bank*, 177 W. Va. 665, 88 S.E.109 (1916) (Ordinarily, a bank cannot refuse to honor a check drawn on an account of its customer; to do so would be a violation of its contract.)

[23] Exhibit 2.

[24] Exhibit 2 at Exhibit A.  Plaintiff's 2019 depository agreement contains substantively the same arbitration provision.  Exhibit 2 at Exhibit D.

fair dealing (Count I); (2) unjust enrichment (Count II); and (3) violation of the West Virginia

Consumer Credit and Protection Act, W. Va. Code § 46-A-6-104 et seq. (Count III).

First, Plaintiff's claims are subject to the Arbitration provision of her 2012 depository

agreement and, accordingly, she has waived her class action claims and her suit must be dismissed

or stayed pending arbitration.  Second, her suit states no cause of action for breach of contract

because her depository agreement clearly provides that a "$36.00 per item" fee will be charged for

as many "overdrafts" as may be "created by check, in-person withdrawal, ATM withdrawal, or

other electronic means" when those transactions are resubmitted to City National for payment by

the payee on a check or other payment by electronic means.  Third, a cause of action for breach of

the implied covenant of good faith and fair dealing does not exist independently of a cause of

action for breach of contract.  Fourth, a cause of action for unjust enrichment does not exist

between two parties whose relationship is governed by an express contract.  Finally, a depository

account is not a consumer good or service, suits under state law over fees charged by national

banks are preempted by federal law, and there can be no class action relief as the CCPA applies

only to West Virginia depositors, each of City National's depositors are governed by a variety of

depository agreements, and Plaintiff waived her ability to be representative in any class action.

## II. DISCUSSION OF LAW[25]

---

[25] Under R. Civ. P. 12(b)(6), the complaint must set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).  Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level...."  Id. (citations omitted). If the allegations in the complaint do "not raise a claim of entitlement to relief, this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court."  Id. at 558.  Factual allegations in a complaint must be accepted as true, but not legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Indeed, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Id. at 679.  Finally, "a court may consider (in addition to the pleadings) documents annexed to it, **and other materials fairly incorporated within it**," Id. at 409, which would include the contract in

**A.      The Amended Complaint Is Barred by An Arbitration Agreement.**

Plaintiff's 2012 depositor agreement states as follows:

**ARBITRATION**

IT IS IMPORTANT THAT YOU READ THIS ARBITRATION PROVISION CAREFULLY. IT PROVIDES THAT YOU MAY BE REQUIRED TO SETTLE A CLAIM OR DISPUTE THROUGH ARBITRATION, EVEN IF YOU PREFER TO LITIGATE SUCH CLAIMS IN COURT. **YOU ARE WAIVING RIGHTS YOU MAY HAVE TO LITIGATE THE CLAIMS IN A COURT OR BEFORE A JURY. YOU ARE WAIVING YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT, CLASS ACTION ARBITRATION OR OTHER REPRESENTATIVE ACTION WITH RESPECT TO SUCH CLAIMS**.

**Any claim or dispute ("Claim") by either you or us against the other arising from or relating in any way to your account, this Agreement or any transaction conducted with the Bank or any of its affiliates will, at the election of either you or us, be resolved by binding arbitration**. **This arbitration provision governs all Claims, whether such claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any other legal theory; and whether such Claim seeks as remedies money damages, penalties, injunctions or declaratory or equitable relief**. Claims subject to this arbitration provision include Claims regarding the applicability of this provision or the validity of this or any prior agreement. As used in this arbitration provision, the term "Claim" is to be given the broadest possible meaning, and includes past, present, and/or future Claims. **If a party elects to arbitrate a Claim, the arbitration will be conducted as an individual action only**. This means that even if a demand for class arbitration, class action lawsuit or other representative action, including a private attorney general action, is filed; any Claim related to the issues of such lawsuits will be subject to individual arbitration.[26]

Under federal law, Plaintiff has not only waived her right to file this lawsuit, but agreed that any dispute with City National would be arbitrated individually, and not as a class action.

The Federal Arbitration Act ("FAA") provides that, "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a

---

a suit for breach of contract.  See *In Town Hotels Ltd. Partnership v. Marriott Intern., Inc.,* 246 F.Supp.2d 469 (S.D. W. Va. 2003).

[26] Exhibit 2 at Exhibit A (Emphasis supplied).  Again, the language of Plaintiff's 2019 depository agreement is the same.  Exhibit 2 at Exhibit D.

controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[27]  Upon the motion of one of the parties, Section 3 of the FAA grants federal courts authority to issue a stay until such arbitration has been had in accordance with the terms of the agreement.[28]  Moreover, it has been held that federal courts have discretion to dismiss a case, as opposed to merely staying action, when all of the issues in the matter are subject to arbitration.[29]  Finally, federal law strongly favors arbitration and interprets arbitration provisions under ordinary contract principles.[30]  "[C]ourts must put arbitration agreements on equal footing with other

---

[27] 9 U.S.C. § 2 (2006).

[28] See 9 U.S.C.A § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.")

[29] See *Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707 (4th Cir. 2001) ("[T]he FAA requires a district court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements. See 9 U.S.C.A. § 3 (West 1999) . . . Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir.1992).  Moreover, a hypertechnical reading of BSR's pleadings would be inconsistent with the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983). BSR made clear during proceedings in the district court that it was 'seeking enforcement of the arbitration clause of the Agreement.' J.A. 141. This is sufficient to invoke the full spectrum of remedies under the FAA, including a stay under § 3.")

[30] *AT & T Mobility LLC v. Concepcion*, ––– U.S. ––––, 131 S. Ct. 1740, 1745–46, 179 L.Ed.2d 742 (2011) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983).

contracts and enforce them according to their terms,"[31] and whether a contract is valid and enforceable is governed by the contract formation and interpretation principles of the forum state.[32]

When determining the scope of a valid arbitration clause, a court is to use the "federal substantive law of arbitrability."[33]   A court must "engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."[34] The scope of an arbitration agreement must be construed with "due regard ... to the federal policy favoring arbitration, and ambiguities ... [must be] resolved in favor of arbitration."[35] Furthermore, "the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'"[36]  With respect to class action claims, the United States Supreme Court recently held in *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019), that unless an arbitration agreement contains a provision in which both parties agreed to arbitrate class action claims, then class action claims are barred, and the parties to that arbitration agreement may only arbitrate individual claims.

In this case, as a matter of federal law, the Plaintiff's claims, including her class action claims, are barred by the arbitration agreement.[37]

---

[31] *Concepcion*, 131 S. Ct. at 1746. (internal citation omitted.)

[32] *Cara's Notions, Inc. v. Hallmark Cards, Inc*., 140 F.3d 566, 569 (4th Cir.1998).

[33] *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n. 4 (4th Cir.2000) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. at 24.).

[34] *Glass v. Kidder Peabody & Co*., 114 F.3d 446, 453 (4th Cir.1997) (citations and quotation marks omitted).

[35] *Cara's Notions*, 140 F.3d at 569 (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ*., 489 U.S. 468, 475–76 (1989)).

[36] *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp*., 130 S.Ct. 1758, 1773 (2010) (quoting *Volt*, 489 U.S. at 479).

[37] See, e.g., *Montgomery v. Applied Bank*, 848 F. Supp. 609 (S. D. W. Va. 2012) (granting motion to compel arbitration between consumer and credit card company over alleged violations of telephone consumer protection act and West Virginia law on ground that court could select substitute arbitrator if originally designated arbitrator was no longer available; even though contract was one of adhesion, it was

**B.      Plaintiff's Claims Are Time-Barred by the Electronic Funds Transfer Act.**

Plaintiff's depository agreement fully informed her that (1) payees, like Walmart, could effectuate "Electronic Check Conversion," which it did with respect to the transactions referenced in her Amended Complaint; (2) payees, like Cashland and Walmart, could not only "Re-present" electronic payment transactions, but could charge fees for those re-presentments; and (3) all of these electronic payment transactions, including permitted re-presentments, were "covered by the Electronic Funds Transfer Act this disclosure."[38]   Thus, Plaintiff's allegation that she was never advised of these rules is fiction.

Under the EFTA[39] and her depository agreement, Plaintiff had "sixty (60) days after the statement was mailed to you" to assert errors and she was advised "We must hear from you no later than sixty (60) days after we sent the FIRST statement on which the problem or error appeared."[40] Once Plaintiff had received her statements that fully disclosed the NSF fee and labelled each subsequent payment attempt as "RE-TRY' or similar language, she had all the information she needed to timely dispute those fees and, because she did not do so, her claims are time-barred under the EFTA and her depository agreement.[41]

---

not procedurally unconscionable; contract was not substantively unconscionable; and consumer's claims were within scope of arbitration provision.)

[38] Exhibit 1 at Exhibit A.

[39] 15 U.S.C. § 1693f(a).

[40] Exhibit 1 at Exhibit A.

[41] See *Hernandez v. Rodriquez*, 2014 WL 11515008, at *3 (D. Ariz.) (dismissing claim that a credit union allowed an unauthorized withdrawal from plaintiff's account for failure to comply with the EFTA's error notification provision); *Overby v. Chase Manhattan Bank*, 351 F. Supp. 2d 219, 225 (S.D.N.Y. 2005) (barring non-EFTA claims due to plaintiff's failure to provide notice of an error as required by both the deposit agreement and the EFTA).

C.     **City National Had the Clear Contractual Right to Charge NSF Fees for Each of the
       "Overdrafts" Created by a Check and Other Payment Types and, Moreover, Federal
       Law Preempts Claims Based on State Law that are Inconsistent with Federal Law
       Governing the Fees Charged by National Banks.**

City National is a national bank, and its relationship with its depositors, like Plaintiff, is a contractual one, with the terms of its depository accounts determined by contract.  In this case, the depository agreement and contractual provisions that govern Plaintiff's checking account, including NSF fees, were not attached or referenced in her Amended Complaint.

With respect to "Fees and Charges," Plaintiff's 2012 depository agreement clearly stated:

> Subject to applicable law, you agree to pay us the fees and charges shown in the Schedules as are applicable to your Account or for other services performed by us. You agree the fees and charges may be changed by us from time to time and authorize us to charge your account for their payment whether or not each charge results in an overdraft of your account.  Existing and future charges may be based upon the overall costs of providing account services and may or may not be based upon the direct cost or expense associated with providing the particular service involved.  The changes may be based on consideration of profit, competitive position, deterrence of misuse of account privileges by customers, and the safety and soundness of the financial institution. We will notify you of the changes, to the extent required by law.[42]

Under "Withdrawal Rules," Plaintiff's 2012 depository agreement specifically addressed overdrafts:

> **(B) Withdrawal Restrictions and Overdrafts.**  We do not have to allow you to make a withdrawal from your Account if you don't have sufficient available funds in the Account to cover the full amount of the withdrawal.  If there are available funds to cover some, but not all, of the withdrawals or other debits to your Account on a single business day, we will post the checks for which there are sufficient available funds in any order we may choose at our sole discretion.  We may pay other withdrawals or debit items (such as charges) prior to paying any checks, and we may post those other withdrawals or debit items in an order we may choose at our sole discretion.  If there are insufficient funds available in your Account to cover a withdrawal or debit presented against your Account, this is called an "overdraft".  We will handle each overdraft in accordance with our Standard Overdraft Policy (described below) or in accordance with any other agreement you may have with us (such as an overdraft protection agreement).  Even if we choose

_____

[42] Exhibit 2 at Exhibit A.

to pay one or more overdrafts, we are not obligated to cover any future overdrafts. When we determine whether payment of an item will create an overdraft, we may determine the balance of your account at any time between the time we receive the item and the deadline for us to take action on the item.  We are not required to determine your account balance more than one (1) time during this period.  **(C) Standard Overdraft Policy.**  Unless we have agreed to a separate overdraft protection agreement with you, the following rules apply.  We are not obligated to pay any overdraft.  Subject to the special rules discussed below for transactions at an ATM and one-time debit card transactions, we may assess a service charge for each transaction that results in an overdraft, whether we pay the overdraft or not. If we pay the overdraft, you agree, immediately upon notice from us, to deposit funds sufficient to cover the overdraft plus any service charge we impose.  We may not impose a service charge in connection with an overdraft that results from a transaction at an ATM or a one-time debit card transaction unless you have given us your consent to pay service charges in connection with overdrafts that result from these transactions and we have sent written confirmation of that consent to you.  You may revoke that consent at any time.[43]

"**Items**" is expressly defined to "**include all orders and instructions for the payment . . . of funds from your account**."[44]  "Items" is **not** defined, as Plaintiff suggests, as a single action on her part to make a single payment.

The NSF fee provision of Plaintiff's 2012 depository account agreement provided, "Non-sufficient Funds (NSF) or overdraft per item:  $36.00 per item; the fee applies to overdrafts 'created by check, in-person withdrawal, ATM withdrawal, or other electronic means, or items not paid due to the Bank's Funds Availability policy,' as applicable."[45]  This language imposed a "$36.00 per item" fee for as many "overdrafts" as "created by check, in-person withdrawal, ATM withdrawal, or other electronic means, or items not paid due to the Bank's Funds Availability

---

[43] Id.

[44] Id.  (emphasis supplied).  "Examples include by check, draft recurring and one-time debit card transactions, ATM (automated teller machine) transactions, automated clearing house (ACH) transactions, reauthorized payments, automatic transfers, internal transfers, in person withdrawals and online transfers or bill payments."  Id.

[45] Id.

policy."[46]  Here, each time a check, in-person withdrawal, ATM withdrawal, or other payment by electronic means created "overdrafts," a $36.00 "per time" fee was chargeable to her account for reprocessing that payment when requested by her payees.

Under federal law, all national banks, including City National, are permitted to charge NSF fees **on each overdraft**.  Indeed, the Office of the Comptroller of the Currency, which is the federal agency responsible for supervision of national banks, has expressly instructed national banks like City National that "there are no laws that determine how many times a check may be resubmitted" for purposes of "Overdraft/NSF Fees and Protection."[47]  In conjunction with these instructions by the OCC, it is important to note that state law claims challenging fees imposed by national banks are expressly preempted by federal law: "A national bank may charge its customers non-interest charges and fees, including deposit account service charges. . . The OCC applies preemption principles derived from the United States Constitution, as interpreted through judicial precedent, when determining whether State laws apply that purport to limit or prohibit charges and fees described in this section."[48]

In *Wells Fargo Bank of Texas, N.A. v. James*, 321 F.3d 488 (5th Cir. 2003), for example, the Fifth Circuit held that an OCC regulation granting national banks the power to "charge [their]

---

[46] Id.

[47] https://www.helpwithmybank.gov/get-answers/bank-accounts/overdraft-fees-and-protection/faq-banking-overdraft-08.html  Moreover, the OCC advises, "The bank is not required to notify you when a check bounces because of insufficient funds (NSF). You are responsible for keeping a current and accurate check/transaction register. By balancing it with your monthly statement, you will know your account balance and prevent overdrafts.  State laws generally provide that it is illegal to write a check—knowingly or negligently—without having sufficient funds to cover the check *on the day you write it*." https://www.helpwithmybank.gov/get-answers/bank-accounts/overdraft-fees-and-protection/faq-banking-overdraft-01.html.  *See also, e.g., Stauffer Seeds, Inc. v. Nebraska Sec. Bank*, 222 Neb. 594, 386 N.W.2d 2 (1986) ("A check returned for insufficient funds can be re-presented to the payor bank and upon such re-presentment is still a demand item subject to the midnight deadline rule. *See Graubart v. Bank Leumi Trust*, 48 N.Y.2d 554, 399 N.E.2d 930, 423 N.Y.S.2d 899 (1979).")

[48] 12 C.F.R. §§ 7.4002(a) and (d).

customers non-interest charges and fees" preempted a state statute prohibiting banks from charging

a fee for cashing checks in certain circumstances, reasoning that the state statute "prohibit[ed] the

exercise of a power which federal law expressly grants to banks.  Similarly, in *Monroe Retail, Inc.*

*v. RBS Citizens, N.A.*, 589 F.3d 274, 281 (6th Cir. 2009), the Sixth Circuit held that the OCC

regulations preempted state law claims based on fees charged for processing garnishment orders.[49]

For these reasons, among others, multiple courts have rejected suits like the very one

Plaintiff has filed challenging what is permitted under federal law.[50]  In *Lambert v. Navy Federal*

*Credit Union*, 2019 WL 3843064 at *1 (E.D. Va.), for example, the plaintiff made the same

---

[49] See also *Parmer v. Wachovia*, 2011 WL 1807218 at *1 n.1 (N.D. Cal.) (To the extent that successor Wells Fargo's status as a national bank, rather than a federally chartered federal savings bank, is deemed significant for purposes of preemption, it is sufficient to note that the preemptive scope of the National Bank Act ('NBA')—pursuant to which the Office of the Comptroller of the Currency ('OCC') is charged with supervision of national banks—and HOLA have the same effect. See *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256, 115 S. Ct. 810, 130 L.Ed.2d 740 (1995); see also, e.g., *Aguavo v. U.S. Bank*, 2009 WL 3149607, *3 (S.D. Cal. 2009) (citing 12 U.S.C. § 93a; 69 Fed.Reg.1904, 1907 (January 13, 2004)). Furthermore, the regulations applicable to national banks pursuant to the National Bank Act are substantially the same as those set forth under HOLA. See 12 C.F.R. § 34.4 provides. Accordingly, the court's preemption analysis remains the same.").

[50] See *Boone v. MB Financial Bank, N.A.*, 375 F.Supp.3d 987 (N.D. Ill. 2019) (bank did not breach terms of checking agreements by charging overdraft fees on transactions that were authorized as checking agreements were unambiguous and expressly permitted bank's conduct, and fee schedule did not articulate that overdraft fee was assessed at any time other than settlement); *Webb v. Republic Bank & Trust Co.*, 2013 WL 5447709 (W.D. Ky.) (dismissing claims alleging breach of contract, breach of the covenant of good faith and fair dealing, unconscionability, conversion, unjust enrichment, EFTA, and KCPA where depository agreement stated, "An insufficient funds/overdraft fee of $35 per Item will be assessed **for each Item** that is submitted for which you do not have sufficient available funds in your account **to cover the Item**."); *Klatt v. Value Bank, Texas*, 2001 WL 1503243 (Tex. Ct. App.) ("Value Bank would honor the checks and impose a $20 nonsufficient funds fee ('NSF fee') **per item**. . . . Kirchoff's affidavit states that a NSF fee of $20 per item is a standard and customary fee in the banking industry. Black's affidavit states that the analysis fees charged by Value Bank were reasonable and customary fees in the banking industry. Appellants did not produce any evidence to controvert the reasonableness of the fees in question. The two subsequent deposit agreements explicitly provided for a **NSF fee of $20 per item** and explain the formula for calculating the analysis fee per month . . . Because the terms of the deposit agreement were unambiguous and because the fees charged by Value Bank conformed to the agreement, Value Bank did not breach its deposit agreement with the corporation."); *Watson v. First National Bank*, 2001 WL 34375782 (Tex. Ct. App.) ("The schedule listed $15 **per item** as the applicable NSF charge. . . . Kinser stated that the NSF fee was charged: (1) regardless of the amount of the overdraft involved; (2) regardless of whether the Bank honored the overdraft or rejected it; and (3) as consideration for the processing time and costs required **for handling NSF items**.").

allegation as Plaintiff in this case that charging "multiple nonsufficient fund fees for multiple attempts to process a single payment request in violation of contractual language implying that only a single nonsufficient fund fee would ever be charged for a payment request, no matter how many times that payment request is declined for nonsufficient funds."

First, with respect to the preemption issue, the court held that the plaintiff's claims were preempted by federal law other than for breach of contract and fraud.[51]  Second, the court held that " Navy Federal Credit Union did not breach the contract when it assessed the second nonsufficient fund fee for Plaintiff's insurer's second ACH debit request."[52]  Finally, the court held, "Plaintiffs' breach of the covenant of good faith and fair dealing claim must be dismissed because Navy Federal honestly exercised its contractual *right* to charge Plaintiff a nonsufficient fund fee for her insurer's second request for payment."[53]  Accordingly, the court granted the  motion to dismiss.[54]

Similarly, in this case, there is no ambiguity in Plaintiff being advised in her 2012 depository agreement that City National is permitted to charge fees for each overdraft.[55]  Not only does Plaintiff have no cause of action against City National for breach of contract, she has no other causes of action where she contractually agreed that City National had the right to charge fees for each overdraft.  Moreover, Plaintiff's state law claims challenging fees imposed by national banks, such as City National, are expressly preempted by federal law.

---

[51] *Lambert*, supra at *3.

[52] Id. at *5.

[53] Id. (Emphasis in original).  With respect to a state law consumer claim, the court held that it was barred by a choice-of-law provision.  Id. at *6.

[54] Id. at *7.

[55] Indeed, on City National's website explaining the benefits of overdraft protection, the answer to the question, "Which overdraft options are right for me?" is "If you have a transaction that causes an overdraft, you'll be charged $36 **per overdraft** whether the item has been paid or returned." (emphasis added).

**D.   Exercising a Contractual Right to Charge an NSF Fee for Each Overdraft in As Per a Depository Agreement Permits No Claim Against a Bank for Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, or Unjust Enrichment.**

"In West Virginia, the elements of breach of contract are (1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract; and (3) damage arose from the breach."[56]  The Court has observed that "[t]he implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those set out in the contract."[57] More recently, the Court reiterated that "this covenant 'does not provide a cause of action apart from a breach of contract claim.'"[58]  Similarly, under West Virginia law, quasi-contract claims, like unjust enrichment, are unavailable when an express agreement exists because such claims only exist in absence of an agreement.[59] This is because  "An express contract and an implied contract, relating to the same subject matter, cannot co-exist."[60]

---

[56] *Wittenberg v. Wells Fargo Bank, N.A*., 852 F. Supp. 2d 731, 749 (N.D. W. Va. 2012)

[57] *Evans v. United Bank*, 235 W. Va. 619, 627, 775 S.E.2d 500, 508 (2015) (quoting *Barn–Chestnut, Inc. v. CFM Dev. Corp*., 193 W.Va. 565, 457 S.E.2d 502, 509 (1995)).

[58] Id. (quoting *Gaddy Engineering Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W.Va. 577, 587, 746 S.E.2d 568, 578 (2013) (internal citations omitted).

[59] *Ohio Valley Health Services & Education Corp. v. Riley*, 149 F.Supp.3d 709, 720-21 (N. D. W. Va. 2015) (citing *Wilson v. Stratosphere Corp*., 371 Fed. Appx. 810, 811–12 (9th Cir. 2010); *Sea Byte, Inc. v. Hudson Marine Mgmt. Servs., Inc*., 565 F.3d 1293, 1301 (11th Cir.2009); *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc*., 448 F.3d 573, 586 (2d Cir.2006) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."); *Karna v. BP Corp. N. Am*., 11 F.Supp.3d 809, 820 (S.D.Tex.2014) ("[A] plaintiff cannot recover in quantum meruit when there is an express contract governing the goods or services at issue."); *Plesha v. Ferguson*, 725 F.Supp.2d 106, 112 (D.D.C.2010) ("Because both promissory estoppel and unjust enrichment presuppose that an express, enforceable contract is absent, District of Columbia courts generally prohibit litigants from asserting these claims when there is an express contract that governs the parties' conduct."); *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F.Supp.2d 1184, 1197 (D.Nev.2006) ("An unjust enrichment claim is 'not available when there is an express, written contract, because no agreement can be implied when there is an express agreement.' "); *Integral Control Sys. Corp. v. Consol. Edison Co. of New York*, 990 F. Supp. 295, 303 (S.D.N.Y.1998)).

[60] Id. (quoting *Case v. Shepherd*, 140 W.Va. 305, 84 S.E.2d 140, 144 (1954); citing *Rosenbaum v. Price Const. Co*., 117 W.Va. 160, 184 S.E. 261, 263–64 (1936)).

Accordingly, as Plaintiff's contract clearly provided that she could be charged an NSF fee for "overdrafts" created by a check or other electronic payment for which she did not request stop payment as was her contractual right, the Amended Complaint states no cause of action for breach of contract, breach of implied covenant of good faith and fair dealing, or unjust enrichment.

**E.** **Because Plaintiff Contractually Agreed that City National Had the Right to Charge an NSF Fee for Each Overdraft; Plaintiff's State Law Claims Challenging Fees Imposed by National Banks are Expressly Preempted by Federal Law; and It Does Not Satisfy Any of the Provisions of the Statutes Cited, the Amended Complaint States No Cause of Action under the Consumer Credit and Protection Act.**

In her Amended Complaint, Plaintiff alleges multiple violations of W. Va. Code § 46A-6-104 et. seq., but the allegations therein support no cause of action.

First, as noted, City National had the contractual right to charge NSF fees for each overdraft. Second, as noted, Plaintiff's state law claims challenging fees imposed by national banks, such as City National, are expressly preempted by federal law. Third, none of the provisions of the Consumer Credit and Protection Act referenced in the Amended Complaint have any application to the facts alleged by the Plaintiff.[61]

---

[61] First, W. Va. Code § 46A-6-101 is merely a statement of legislative purpose. Second, W. Va. Code § 46A-6-102 provides definitions for the chapter. Third, W. Va. Code § 46A-6-103 provides for rules and regulations to be promulgated. Fourth, W. Va. Code § 46A-6-104 states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fifth, W. Va. Code § 46A-6-105 exempts "acts done by the publisher, owner, agent or employee of a newspaper, periodical or radio or television station in the publication or dissemination of an advertisement, when the owner, agent or employee did not have knowledge of the false, misleading or deceptive character of the advertisement, did not prepare the advertisement and did not have a direct financial interest in the sale or distribution of the advertised goods or services. Sixth, W. Va. Code § 46A-6-106 creates a private cause of action "for  any person who purchases or leases goods or services and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article." Seventh, W. Va. Code §§ 46A-6-107 and 108 address warranties, remedies, and plain language used by merchants with respect to goods in consumer transactions. Finally, W. Va. Code § 46A-6-110 prohibits any person from soliciting, accepting, or cashing post-dated checks. None of these have any application to the facts alleged in the Amended Complaint.

18

As a matter of law, a depository account, like the checking account in this case, is not a "consumer good or service" purchased by a depositor from a bank under the Consumer Credit and Protection Act and, therefore, is not subject to its provisions.[62]   Accordingly, the Amended Complaint states no cause of action under the Consumer Credit and Protection Act.

**F.      The Arbitration Agreement Applicable to Plaintiff Bars Class Relief and the Amended Complaint States No Cause of Action for Class Relief.**

Although asserted in three counts, the Amended Complaint states four causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and under the West Virginia Consumer Credit and Protection Act – none of which present a predicate for class relief.  Moreover, as noted, Plaintiff agreed in both her 2012 and 2019 depository agreements to waive any class action relief.  Consequently, Plaintiff's Amended Complaint states no cause of action and her request for class action relief should be stricken.

First, "striking class allegations before the plaintiff files a motion for class certification is not premature where it is unnecessary for the court 'to probe behind the pleadings before coming to rest on the certification question.'"[63] Thus, "A court may grant a motion to strike class allegations where the pleading makes clear that the purported class cannot be certified and no amount of discovery would change that determination."[64]

---

[62] See *Miller v. JP Morgan Chase Bank, N.A.*, 2018 WL 5046080 at *4 (S.D. W. Va.) ("the Court finds that the mortgage loan in question is not the sale of a good or service); *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763 (5th Cir. 2016)(claim that mortgagee failed to make automatic withdrawals from her checking account to pay her mortgage did not involve any goods or services under Texas Deceptive Trade Practices Act); *In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litigation*, 1 F.Supp.3d 34 (E.D. N.Y. 2014) (overdrafts and overdraft fees were not "goods" or "services" within California's Consumers Legal Remedies Act as required for checking account customers' consumer protection claims against bank, challenging operation of overdraft program).

[63] *Burch v. Murphy*, 2019 WL 1243860, at *2 (D. S.C.) (citing *Waters v. Electrolux Home Prod., Inc.*, 2016 WL 3926431 at *4 (N.D. W. Va.).

[64] *Waters v. Electrolux Home Prod., Inc.*, 2016 WL 3926431 at *4 (N.D. W. Va.).

19

Second, it is appropriate to strike a complaint's class action allegations where, as here, a plaintiff has waived the right to file class action claims or to serve as a class representative.[65]

Finally, as in this case, where Plaintiff had different accounts with different depository agreements with different provisions; City National's customers have different accounts with different depository agreements with different provisions over different time periods with different applicable laws depending on their states of residence; and no one other that Plaintiff has expressed any confusion about being charged an NSF fee per overdraft, it is appropriate to strike the Plaintiff's class action allegations.[66]

### III. CONCLUSION

WHEREFORE, the Defendant, City National Bank of West Virginia respectfully requests that the Amended Complaint be dismissed or, in the alternative, that this matter be stayed pending referral of the matter to arbitration, and that this Court strike the Plaintiff's class action allegations.

**CITY NATIONAL BANK
OF WEST VIRGINIA**

By Counsel

---

[65] See, e.g., *King v. Capital One Bank (USA), N.A.*, 2012 WL 5570624 at *8 (W.D. Va.) (striking class action claims where "The explicit language of the clause states that the Plaintiff will not participate in 'any class action lawsuit,' a term that undoubtedly encompasses a class action lawsuit brought in federal district court.").

[66] See, e.g., *Jones v. BRG Sports, Inc.*, 2019 WL 3554374 at *6 (N.D. Ill.) ("the motion to strike must here be granted because the plaintiffs' particular class allegations, taken as true, are unfit for resolution using the class action device due to the individualized questions of law and fact that will invariably predominate over common questions."); *Baker v. Home Depot USA, Inc.*, 2013 WL 271666, *5 (N.D. Ill. 2013) (granting motion to strike in which "named plaintiffs could not satisfy the commonality, typicality, and adequacy requirements of Rule 23(a), that individual issues of fact and law would predominate, and that a class action would not be manageable, nor the superior method for resolving the claims brought"); *Edwards v. Zenimax Media Inc.*, 2012 WL 4378219 (D. Colo.) (granting motion to strike class claims where they did not satisfy, on their face, the requirements of Rule 23(a)); *Lumpkin v. E.I. Du Pont de Nemours & Co.*, 161 F.R.D. 480, 482 (M.D. Ga. 1995) (granting a motion to strike the plaintiff's class allegations because they failed plead the numerosity, commonality, typicality, and adequacy of representation requirements or show that further discovery would substantiate a class action).

/s/ Ancil G. Ramey
Ancil G. Ramey
WV Bar No. 3013
Steptoe & Johnson PLLC
P.O. Box 2195
Huntington, WV 25722-2195
Telephone (304) 526-8133
ancil.ramey@steptoe-johnson.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

**BRENDA C. NOE, on behalf of herself**
**and all others similarly situated,**

       **Plaintiff,**

**v.**                                 **Civil Action No: 3:19-cv-00690**
                                     **Honorable Robert C. Chambers**

**CITY NATIONAL BANK OF WEST**
**VIRGINIA,**

       **Defendant.**

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing has been served on all parties via their counsel of record through the Court's ECF system on this date, November 22, 2019.

                                _____*/s/ Ancil G. Ramey*_____
                                Ancil G. Ramey
                                WV Bar No. 3013