## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON DIVISION

BRENDA C. NOE, on behalf of herself
and all others similarly situated,

               Plaintiff,

    vs.                               Civil Action No. 3:19-cv-00690

CITY NATIONAL BANK OF WEST
VIRGINIA,

               Defendant.

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
## TO DISMISS, TO STAY, OR TO STRIKE CLASS ALLEGATIONS

Brenda Noe ("Ms. Noe" or "Plaintiff") opposes dismissal of her Amended Class Action

Complaint.  For the reasons explained herein, Defendant's Motion to Dismiss, Motion to Stay, and

to Strike Class Action Allegations (ECF No. 8) should be denied.

## INTRODUCTION

The practice at the heart of this litigation – the assessment of multiple $36 insufficient

funds or "NSF" Fees on the same electronic transaction – is devastating and abusive to consumers,

many of whom have low-incomes and are already struggling to stay financially afloat. NSF Fees,

assessed when a bank *rejects* an attempted transaction, are distinct from overdraft fees ("OD

Fees"), assessed when a bank *authorizes and pays* a transaction even though there are insufficient

funds. When a bank pays an overdraft, it advances funds in return for the OD Fee it assesses.

When, on the other hand, a bank *rejects* an electronic payment for insufficient funds, the

transaction is not paid. No money is advanced by the bank and, in an era of automated processing,

there is almost no cost to the bank. Here, City National Bank of West Virginia ("City National")

charges an NSF Fee *again and again* on the same attempted transaction when it is reprocessed. For example, City National charged $180 in NSF fees on a single attempted payment of $25.13 by Ms. Noe. The effect is crushing and unconscionable. Because it is such an extreme practice, leading American banks like JP Morgan Chase refuse to engage in it. And banks that do engage in the practice explicitly disclose that they do so. City National's operative agreement does not; instead, it promises the opposite.

City National's Motion steers focus away from its shocking and abusive practice by arguing – based on matters far outside the pleadings – that when the same electronic payment is resubmitted by the merchant after an insufficient funds rejection, it becomes a *new*, unique "item" worthy of a *new* NSF Fee. Alternatively, City National argues that it is the merchant that is responsible for this phenomenon. Yet City National's current contract never hints that this scenario is possible, instead indicating "a fee" – not multiple fees – will be charged on a single transaction no matter how many times it is reprocessed. The Court should reject City National's fundamental premise that an electronic payment reprocessed after an initial return for insufficient funds becomes a new, unique item for fee assessment purposes.

Among the American banks that do assess multiple NSF Fees on the same transaction, many *expressly* inform their accountholders that they can incur more than one NSF Fee on the same item. The reason other major banks provide this warning is that ordinary accountholders would have no reasonable expectation that the same single payment request could incur numerous NSF Fees – or that an "item" can morph into an entirely different "item" when it is rejected and later reprocessed. Unlike other leading American financial institutions, which have chosen not to engage in such a punitive practice, or at least to truthfully disclose their NSF practices, City National has chosen to breach its contractual agreements with its customers and deceive them as

to its fee practices.  Accordingly, its motion to dismiss should be denied.

## STANDARD OF REVIEW

To overcome a motion to dismiss under Federal Rule 12(b)(6), a complaint must be plausible. *Henry v. Synchrony Bank*, 2016 WL 6871269, at *1 (S.D. W. Va. Nov. 21, 2016) (Chambers, J.) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007)). This standard requires a plaintiff to set forth the "grounds" for an "entitlement to relief" that are more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at *1 (quoting *Twombly*, 550 U.S. at 555). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Henry*, 2016 WL 6871269, at *1 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Accepting the factual allegations in the complaint as true, the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Henry*, 2016 WL 6871269, at *1 (quoting *Twombly*, 550 U.S. at 555). Courts are, however, required to draw all reasonable inferences from the facts in the plaintiff's favor. *Caldwell v. Standard Ins. Co.*, 2015 WL 4727378, at *3 (S.D. W. Va. Aug. 10, 2015).

The general rule is that external evidence ought not be considered in a 12(b)(6) motion to dismiss. *Watkins v. Wells Fargo Bank*, 2011 WL 777895, at *3 (S.D. W. Va. Feb. 28, 2011) (Chambers, J.). When matters outside the pleadings are to be considered on a motion to dismiss, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Koontz v. Wells Fargo, N.A.*, 2011 WL 1297519, at *7 (S.D. W. Va. Mar. 31, 2011) (citing *Plante v. Shivar*, 540 F.2d 1233, 1234-35 (4th Cir 1976)). Where, as here, a plaintiff

has not been afforded the opportunity to present material pertinent to a Rule 56 motion, nor had the opportunity to conduct reasonable discovery, courts should decline the consideration of outside exhibits. *Koontz*, 2011 WL 1297519, at *7.[1]

## ARGUMENT AND CITATION OF AUTHORITY

I.     **The Parties Do Not Have an Agreement to Arbitrate.**

Under the Federal Arbitration Act and West Virginia law, a court must compel arbitration if it finds that (1) a valid arbitration agreement exists between the parties, and (2) the dispute before it falls within the scope of this agreement. *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999); *Schumacher Homes of Circleville, Inc. v. Spencer*, 787 S.E.2d 650, 659-60 (W. Va. 2016). "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Bird v. Turner*, 2015 WL 5168575, at *9 (N.D. W. Va. Sept. 1, 2015). "Before compelling an unwilling party to arbitrate, Section 4 requires the court to engage in a limited review to ensure that the dispute is arbitrable – i.e., that a valid agreement to arbitrate exists between the parties, and that the specific dispute falls within the substantive scope of that agreement." *Charles Shaid of Pa., Inc. v. George Hyman Constr.*, 1995 WL 46702, at *2 (E.D. Pa.), *aff'd sub nom.* 70 F.3d 1255 (3d Cir. 1995); *also John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998).

Here, no valid arbitration agreement exists between Ms. Noe and the Bank because the operative version of the Terms and Conditions does ***not*** contain an arbitration clause. Ms. Noe attached to her Amended Complaint the 2016 version of the Terms and Conditions, which does

---

[1] While courts will consider matters outside the pleadings if they are "integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge [their] authenticity," *Watkins*, 2011 WL 777895, at *3, none of the documents submitted by Defendant are integral to the complaint and Ms. Noe has not explicitly relied upon any of them. Moreover, Plaintiff certainly challenges their authenticity, having been given no opportunity to conduct discovery.

4

*not* contain an arbitration provision. By the plain language of this document, this version of the Terms and Conditions amended and replaced the version relied upon by City National.

The 2012 version of the City National Terms and Conditions, which City National argues governs Ms. Noe's account, provides as follows: "[w]e have the right to change the rates and fees in accordance with the terms of the Schedule. We also reserve the right to change ***any other term of this Agreement at our sole discretion***." *See* 2012 City National Terms and Conditions, p. 5 (Exh. A to Aff. of S. Dickens) (ECF No. 7-2) (emphasis added). Thus, under the agreement's plain terms, the Bank had the authority to amend or remove terms, including the arbitration provision. As evidenced by the 2016 version of the Terms and Conditions, City National amended its form contract and entirely removed the arbitration clause.

The 2016 version attached by Ms. Noe to her Amended Complaint clearly supersedes the 2012 version relied upon by the Bank. The Terms and Conditions state: [i]f you sign the signature card or open or ***continue to use the account***, you agree to these rules." *See* Exh. A to Amended Complaint, p. 1 (emphasis added) (ECF No. 1-1). Because the version attached to the Amended Complaint does not contain an arbitration clause, there is no agreement to arbitrate.

Defendant's own evidence, which it improperly attempts to rely upon at the pleadings stage, supports such a conclusion. City National attached the December 2017 version of the Terms and Conditions as Exhibit B to the Affidavit of Sheila Dickens. This version also establishes that City National amended its form contract to entirely remove arbitration.

According to the December 2017 Terms and Conditions, "[c]ontinued use of the account(s) after receipt of these terms and conditions constitutes acceptance of, and agreement to, the terms and conditions." *See* Dec. 2017 Terms and Conditions, p. 1 (Exh. B to Aff. of S. Dickens) (ECF No. 7-2). Ms. Noe's use of her account, including the 2018 NSF fee charges, which are the

gravamen of her complaint, have resulted in her being bound by the December 2017 Terms and Conditions. *E.g.*, *Citizens Telecommunications Co. of W. Va. v. Sheridan*, 799 S.E.2d 144, 152 (W. Va. 2017) (customer assented to the change in terms by continuing to subscribe to service after receiving notice of change); *J.I. Hass Co. v. Gilbane Bldg. Co.*, 881 F.2d 89, 93 (3d Cir. 1989) (continuing to work following change order evidenced acceptance of change).[2] Furthermore, the December 2017 Terms and Conditions make it clear that they apply to **all** City National accounts. Why else would the December 2017 Terms and Conditions state "Effective 30 calendar days after we sent this notice to you, your account(s) shall be governed by the following terms and conditions." *See* Dec. 2017 Terms and Conditions, p. 1.

The district court and court of appeals decisions in *Dottore v. Huntington National Bank*, 2010 WL 3861010 (N.D. Ohio Sept. 28, 2010), *aff'd* 480 F. App'x 351 (6th Cir. May 4, 2012), addressed the exact situation currently before the Court – where a later-adopted account agreement **removed** arbitration. In *Dottore*, from 2003 to 2005, the plaintiff and the bank operated under an account agreement that contained an arbitration clause. 2010 WL 3861010, at *2. In 2005, the bank provided the plaintiff with a new account agreement. *Id.* It was a completely new agreement, titled "YOUR DEPOSIT ACCOUNT TERMS AND CONDITIONS." *Id.* The new version did not contain an arbitration clause. *Id.*

The bank moved to compel arbitration, relying on the prior account agreement. *Id.* The district court concluded that the parties did not have an agreement to arbitrate and denied the bank's motion because the operative account agreement "[did] not include any arbitration provision, and [did] not refer to any previously existing agreements." *Id.* Therefore the court found "there is

---

[2] The 2012 Terms and Conditions also established "[y]our continued use of this Account evidences your agreement to any amendment." *Id.* at 8. Thus City National's own document belies its argument that Ms. Noe's account is not governed by the December 2017 agreement.

simply no agreement between the parties to arbitrate this dispute." *Id.*

The Court of Appeals affirmed in *Dottore v. Huntington National Bank*, 480 F. App'x 351, 353 (6th Cir. May 4, 2012), holding: "No enforceable arbitration agreement exists between the parties because the 2005 [] document governs the account and it does not include an agreement to arbitrate." The court emphasized the fact that the 2005 document was entitled "account terms and conditions" and did not incorporate any other documents by reference. *Id.*

Here, City National's December 2017 Terms and Conditions are comprehensive and supersede any prior account agreement. *See* Dec. 2017 Terms and Conditions, p. 3 (continued use of account after effective date or new terms evidences acceptance of said terms). Because the December 2017 version does not require arbitration, the parties have no agreement to arbitrate.

The Eleventh Circuit's recent decision in *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir.), *cert. denied*, 135 S. Ct. 144 (2014), also supports a finding that Ms. Noe and City National do not have an agreement to arbitrate. There, the district court found that the later enacted version of an account agreement that did not contain an arbitration clause controlled over a prior version of the agreement. 915 F. Supp. 2d 1334, 1337-39. The district court found that the later enacted version of the deposit agreement was expressly permitted under the language contained in the former agreement, and expressly superseded all prior versions according to the plain language of the form contract. *Id.* at 1339-40. On appeal, the Eleventh Circuit affirmed, holding: "[w]e agree with the Second and Sixth Circuits, and hereby hold that an entirely superseding agreement renders a prior agreement's arbitration clause ineffective, even if the superseding agreement is silent on arbitration." 745 F.3d at 1122.

Numerous other decisions are in accord. In *Collier v. Nat'l Penn Bank*, 128 A.3d 307 (Pa. Super. 2015), for example, the court, relying on *Dottore* and *Dasher*, found that there was no valid

agreement to arbitrate because "the plain language of the 2010 Agreement clearly indicates that it was intended to supersede the 2008 Agreement, certainly with regard to judicial resolution of disputes in lieu of arbitration, which is the issue before us." *Id.* at 311. Therefore, the appellate court upheld the denial of the bank's request for arbitration. *Id.; also Goss-Reid & Assocs., Inc. v. Tekniko Licensing Corp.*, 2002 WL 31688845, at *1-2 (5th Cir. Oct. 28, 2002) (holding that arbitration provision in prior agreement was unenforceable because the parties had since signed a new agreement that explicitly "supersede[d] all prior agreements"); *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435, 440-42 (S.D.N.Y. 2013) (holding subsequent agreement vitiated arbitration clause in prior agreement even though it did not explicitly say so); *Biremis Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2012 WL 760564, *4-5 (E.D.N.Y. Mar. 8, 2012) (parties need not use "magic words" in a later agreement in order to void arbitration clause in prior contract); *Krueger v. Heartland Chevrolet, Inc.*, 289 S.W.3d 637, 639-40 (Mo. App. W.D. 2009) (merger clause in subsequent contract controlled and arbitration clause in earlier contract not enforceable); *Opri v. Birkhead*, 2009 WL 931681, *3-8 (Cal. App. 2 Dist. Apr. 8, 2009) (subsequent agreement that did not contain an arbitration clause controlled because it constituted novation of first agreement). Because the December 2017 Terms and Conditions govern Ms. Noe's account, the parties do not have an agreement to arbitrate. Defendant's request for arbitration must be denied.[3]

---

[3] While Defendant's arbitration argument is based entirely on the 2012 Terms, the Bank also submits documents outside the pleadings to support a purported 2019 arbitration clause. *See* Exh. D to Aff. of S. Dickens. Any suggestion that this clause applies fails for at least two reasons. First, by Defendant's own admission, this clause was not in effect and did not apply to Ms. Noe's account when the NSF fees in question were incurred. *See* Dickens Aff., ¶ 19. Second, Plaintiff disputes the validity of the 2019 arbitration clause, which is never mentioned in the table of contents of the purported 2019 Terms (ECF No. 7-2, p. 52) nor listed as a document Ms. Noe acknowledged receipt of when she executed the 2019 Account Agreement. *Id.* at 48. Defendant cannot rely on a disputed document before discovery. *Koontz*, 2011 WL 1297519, at *7.

## II.     The Electronic Funds Transfer Act and the Error Notification Provision of the Terms and Conditions Are Inapplicable to Plaintiff's Claims.

In seeking dismissal, City National wrongly argues that Ms. Noe's claims are barred by her failure to plead compliance with the Electronic Funds Transfer Act ("EFTA") and the error notification provisions of the Terms and Conditions. City National ignores Plaintiff's allegations that she satisfied all prerequisites for bringing her claims. *See* Amended Complaint, ¶¶ 66, 79. And, in any event, EFTA and the error notification provisions do not apply.

Assuming for the sake of argument that EFTA (15 U.S.C. § 1693f) does apply to Ms. Noe's claims, even though she has not asserted such a claim in the Amended Complaint, the notice provisions of the statute provide as follows:

**(a) Notification to financial institution of error**
If a financial institution, within sixty days after having transmitted to a consumer documentation pursuant to section 1693d(a), (c), or (d) of this title or notification pursuant to section 1693d(b) of this title, receives oral or written notice in which the consumer--
> **(1)** sets forth or otherwise enables the financial institution to identify the name and account number of the consumer;
> **(2)** indicates the consumer's belief that the documentation, or, in the case of notification pursuant to section 1693d(b) of this title, the consumer's account, contains an error and the amount of such error; and
> **(3)** sets forth the reasons for the consumer's belief (where applicable) that an error has occurred,
the financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days.

*Id.* at § 1693f(a). Unfortunately for City National, the conduct Ms. Noe challenges – the Bank's *systemic and intentional assessment of NSF fees* – is not the type of "error" covered by this provision, which deals with fraudulent transactions. An example of such an "error" is fraudulent conduct by a third party, such as a forged signature or an altered check, ***not*** the intentional acts of City National itself. Any other interpretation of EFTA would require Ms. Noe to notify City National about its own systematic fee assessment policies, which is nonsensical.

9

The language in the 2017 Terms and Conditions does not support the Bank's argument either. The agreement states "[i]f you discover . . . any unauthorized signatures or alterations, you must promptly notify us of the relevant facts" and further states "[y]ou further agree that if you fail to report any unauthorized signatures, alterations or forgeries in your account within 60 days of when we first send or make the statement available . . . the loss will be entirely yours." *See* 2017 Terms and Conditions, p. 3. Again, the conduct at issue is fraudulent conduct by third parties, such as a forged signature or an altered check, ***not*** the intentional acts of City National. There is no reference to City National's intentional assessment of NSF fees and no warning that failure to use this process would affect customers' ability to pursue a claim in court. Ms. Noe was not required to notify City National about her claims, which challenge the Bank's own NSF fee assessment practices. The Bank's argument to the contrary is unreasonable and has been rejected by courts. *See, e.g., Smith v. Fifth Third Credit Union*, 2019 WL 1746367, at *9 (S.D. Ohio Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 4050946 (S.D. Ohio Aug. 28, 2019) (finding "unpersua[sive]" defendant-bank's argument that any "condition precedent" in a nearly identical contract warranted dismissal given that: "(1) the notice provision does not clearly and unambiguously apply to the bank fees at issue; (2) to interpret the notice provision to apply to bank fees could be viewed as hypertechnical and unconscionable"); *Tannehill v. Simmons Bank,* No. 3:19-cv-140-DPM (ECF No. 23 at 2) (rejecting argument that notice provision required dismissal of the plaintiff's claims) (Exhibit 1 hereto).

Other courts have come to similar conclusions. For example, in *DelJack, Inc. v. U.S. Bank, N.A.*, 2012 U.S. Dist. LEXIS 140929 (D. Idaho Sept. 26, 2012), the plaintiff sued a bank for cashing checks brought to the bank by an employee despite restrictive endorsements on the checks "for deposit only." The bank argued that the deposit agreement provided in pertinent part that the

bank would not be responsible for any "problem" that was not reported within 30 calendar days after the mailing of the statement. *Id.* at \*7-8. The deposit agreement read:

> **Your Duty to Examine Your Statement**. As used in this section, the term "problem" means any error, alteration or unauthorized transaction (including, but not limited to, forged or missing signatures and excluding consumer electronic banking transactions) related to your account.

*Id.* at \*7. The court held that this provision, like the clauses relied on by City National here, does not require the reporting of any possible disputed matter in a bank statement, only fraud or unauthorized signatures. *Id.* The court recognized that the case law does not interpret such a clause to impose a duty on the customer to report the bank's own wrongdoing. *Id.*

Perhaps the most cogent explanation of why City National may not hide behind such inapposite contract language dates back roughly 100 years. As explained in *First Nat'l Bank of Philadelphia v. Farrell*, 272 F. 371 (3d Cir.), *cert. denied*, 257 U.S. 634, 635 (1921), accountholders are not required to report a bank's own unlawful conduct to the institution:

> But the general rule arising from the examination of pass-book or statements by the depositor himself, and the variation of the rule arising from the examination of them by his authorized agent, involve in practically every reported instance wrongdoing where the negligence of the bank was not involved and where the wrongful act was entirely that of a person other than the bank. Both the rule and its variations disappear altogether where the bank has been negligent in detecting the fraud . . . . In honoring checks beyond the authority granted it by the depositors' power of attorney, -- a document in its possession, -- the bank in this case knew, or was charged with knowledge of, its own unlawful conduct . . . . The depositors' failure personally to examine the periodical statements and promptly to acquaint the bank with its own wrongdoing misled the bank in nothing. **Therefore the law did not impose upon depositors in this case the duty to check up passbook or examine monthly statements to prevent the defendant bank from continuing its own wrongful conduct; nor did the law exonerate the bank from acts which it knew were wrong simply because the depositors had not found it out and had not told it to stop.**

*Id.* at 377 (emphasis added). The same logic applies with equal force today.

### III.   City National Has No Right to Charge Multiple NSF Fees on the Same Item.

City National is correct that its relationship with its depositors, like Ms. Noe, is a

contractual one that is governed by the terms and conditions applicable to the depositors. However, City National is manifestly incorrect in its assertion that Ms. Noe's account is governed by the 2012 agreement. This is true for at least two reasons. First, City National's attempt to rely on the 2012 agreement must be rejected because it is contrary to the allegations contained in Ms. Noe's Amended Complaint. *See* ECF No. 3, ¶¶ 9-10 (alleging the 2016 Terms and Conditions attached as Exhibit A to the Amended Complaint govern her account). This allegation controls for the purposes of this motion. *E.g.*, *Henry*, 2016 WL 6871269, at *1. Defendant's attempt to rely on the purported 2012 version of the Terms and Conditions cannot be accepted by this Court given that Ms. Noe has clearly disputed its authenticity and applicability. *E.g.*, *Koontz*, 2011 WL 1297519, at *7 (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Therefore, this Court is precluded from considering the 2012 version of the agreement.

Second, City National's attempt to rely upon the 2012 version of the agreement is contradicted by the Bank's own evidence. As noted above, within the 2012 version of City National's agreement, the Bank reserved the right to make changes to the terms in its sole discretion. *See* 2012 City National Terms and Conditions, p. 4 ("We reserve the right to change the terms and conditions"); p. 5 ("We also reserve the right to change any other term of this Agreement at our sole discretion"); p. 8 ("You agree that the terms and conditions of the Agreement . . . may be amended by us from time to time . . . . Your continued use of the Account evidences your agreement to any amendment"). The December 2017 agreement attached by the Bank as Exhibit B to the Affidavit of Sheila Dickens clearly constituted a new version of the Terms and Conditions. Indeed the document explicitly stated: "This is a notice of change to the Terms and Conditions of your account with us." *See* Dec. 2017 Terms and Conditions, p. 1. The document further stated that this change became effective 30 calendar days after the notice is sent and that

"[c]ontinued use of your account(s) after receipt of these terms and conditions constitutes acceptance of, and agreement to, the terms and conditions." *Id.* Based on the City's own evidence, the 2012 agreement has long since been replaced.[4]

## IV. City National Breached the Express Terms of the Contract When It Assessed More Than One NSF Fee on the Same Item.

In West Virginia, the elements of breach of contract are (1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract; and (3) damage arose from the breach. *E.g.*, *Patrick v. PHH Mortg. Corp.*, 937 F. Supp. 2d 773, 792 (N.D. W. Va. 2013); *Wince v. Easterbrooke Cellular Corp.*, 681 F. Supp. 2d 688, 693 (N.D. W. Va. 2010). Ms. Noe has clearly pled all three elements. *See* Amended Compl., ¶¶ 67-71. The crux of Plaintiff's claim is simple: City National promised to assess a single NSF Fee "per item." But, in practice, it assesses *multiple* NSF Fees on the same item. In so doing, it breaches the contract.

Importantly, City National's double, triple, or quadruple NSF Fee practice is not universal in the banking industry. Many major banks, like JP Morgan Chase, the largest consumer bank in the country and City National's competitor, do not engage in the practice of charging more than one NSF Fee on the same item when a bank reprocesses it for payment, and charge a maximum of one fee per item. *See* Amended Compl., ¶ 13. Other financial institutions that engage in the practice plainly and expressly disclose it to accountholders. First Hawaiian Bank, for example, states: "**YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**" (emphasis added). *Id.* ¶ 48. Another bank, First Financial Bank, clarifies its practice and defines the meaning

---

[4] The same result is reached under the 2016 Terms and Conditions which Ms. Noe attached to her Amended Complaint. That agreement also states that continued use of an account constituted evidence of acceptance of those ruled. *See* 2016 Terms and Conditions, p. 1.

13

of the term "item," stating "Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment is considered an item and will be charged accordingly."[5] These other banks' express warnings are necessary precisely because it is counterintuitive to reasonable consumers that a single transaction or "item" could incur *multiple* NSF Fees. In stark contrast, City National hides its harmful practice, and indeed its contract actually bars assessment of multiple NSF Fees on the same item.

Importantly, at no point in its motion does City National allege that the 2016 Terms and Conditions, or the 2017 Terms and Conditions, expressly authorize NSF Fees each time a payment request is processed on an overdrawn account. That is because there is no such express disclosure. City National's Terms and Conditions and its Fee Schedule convey to customers that a *single* $36 NSF Fee will be assessed when an item, including an electronic payment item, is returned for insufficient funds. *See* Amended Compl., ¶ 9.

The Terms and Conditions inform a customer:

> If another transaction is presented for payment in an amount greater than the funds left after the deduction of the temporary hold amount, that ***transaction*** will be a nonsufficient funds (NSF) transaction if we do not pay it or an overdraft transaction if we do pay it. You will be charged ***an NSF or overdraft fee*** according to our NSF or overdraft fee policy.

*See* Terms and Conditions, p. 2 (emphasis added) (ECF No. 3-1). Further, City National's Fee Schedule establishes that a $36 fee will be charged for either an "Non-Sufficient Funds (NSF) or overdraft fee" per item. *See* Fee Schedule (ECF No. 3-2).

City National breaches its contract when it charges more than one $36 NSF Fee on the

---

[5]       https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_Disclosure_of_ Charges.pdf (last accessed December 13, 2019).

same item because the contract states – and reasonable consumers understand – that the same item can only incur a single NSF Fee. *See* Amended Compl., ¶ 12. City National's Terms and Conditions never – neither the 2016 version, nor the 2017 version – disclose its NSF practice.

Beyond the language found in the Terms and Conditions and Fee Schedule, City National's online disclosures also inform customers that only a single NSF Fee can be assessed on checks, ACH debits, and electronic payments. The website informs its account holders:

> If you write a check or make a recurring payment for more money than you have in your account, City will return the item unpaid and a $36 NSF fee will be assessed against your account.

*See* Amended Compl., ¶ 36. Thus City National does not provide any information to its customers that would inform them that a single check or single recurring payment becomes a new item each time it is rejected for payment then reprocessed, especially when – as here – Ms. Noe took no action to resubmit the item. *Id.* at 37.

There is zero indication anywhere in the Terms and Conditions, the Fee Schedule, or on City National's website that the same check or recurring payment could possibly incur multiple NSF Fees. Even if City National reprocesses an instruction for payment, it is still the same check or recurring payment. The Bank's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

Indeed, the language noted above makes clear that it is the action of the accountholder, and only the accountholder, that creates an item: "*If you write a check or make a recurring payment . . . .*" As alleged in the Amended Complaint, Ms. Noe took only a single action to make a single payment; she may therefore be charged only a single fee.

Moreover, by expressly linking OD Fees and NSF Fees in the Fee Schedule, City National bolsters the reasonable expectation that only a single fee can be assessed on an item. Here is why:

for an item charged an "overdraft fee" and thus paid into overdraft, there is no chance it can be subject to reprocessing and thus no chance it could be subject to a second or third fee, since it has already been paid. No reasonable contract reading could allow the *other* fee mentioned in the disclosure – the NSF Fee – to be treated so differently and assessed two or three times on the same item. Neither the 2016 nor the 2017 disclosures ever discuss a circumstance in which City National may assess multiple NSF Fees for an item that was returned for insufficient funds and later reprocessed one or more times and returned again (incurring an NSF Fee). Indeed, City National does not even try to argue that it does.

In the directly analogous *Morris v. Bank of America, N.A.*, 2019 WL 1274928, at *4-5 (W.D.N.C. Jan. 8, 2019), *report and rec. adopted in part*, 2019 WL 1421166 (W.D.N.C. Mar. 29, 2019), the plaintiffs lodged identical claims regarding the assessment of multiple NSF Fees on the same item. The court applied precedent from other banking cases and denied dismissal:

> Plaintiffs base their breach of contract claim on both express breach and breach of the implied covenant of good faith and fair dealing. *See, e.g., In re HSBC Bank*, 1 F. Supp. 3d 34, 54 (E.D.N.Y. 2014) (allowing claim to proceed despite HSBC's argument that it had contractual authority to post debit transactions from high to low); *Gutierrez v. Wells Fargo*, 622 F. Supp. 2d 946, 954 (N.D. Cal. 2009) (allowing claim to proceed despite Wells Fargo's argument that it had contractual authority to post items to checking account in any order the bank chose); *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1363 (N.D. Ga. 2008) (declining to dismiss plaintiff's breach of the implied covenant of good faith and fair dealing at the motion to dismiss stage when plaintiff alleged that Wachovia "breached the contract provisions [of its Deposit Agreement] de facto even if it maintained performance de jure" in manipulating transactions to maximize overdraft fees); *Hunting Aircraft, Inc. v. Peachtree City Airport Auth.*, 281 Ga. App. 450, 453–54 (2006) ("[W]here the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith.")…Applying these precedents to the facts alleged here, Plaintiffs have sufficiently alleged a breach of contract claim under both theories. For those reasons, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiff' breach of contract claim be denied.

*Id*. at *4-5 (citation omitted). The logic of *Morris* applies with equal force here. *See also*, *Garcia v. UMB Bank, N.A.*, No. 1916CV01874 (Mo. Cir. Oct. 18, 2019) (denying motion to dismiss breach

of contract claim involving multiple NSF fees on same item) (Exhibit 2 hereto).

In sum, Plaintiff offers a plausible breach of the Terms and Conditions, and the Court must deny City National's Motion to Dismiss.

**V.     Plaintiff States Valid Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing and Unjust Enrichment.**

West Virginia law "implies a covenant of good faith and fair dealing in every contract for purposes of evaluating a party's performance of that contract." *Stand Energy Corp. v. Columbia Gas Transmission Corp.*, 373 F. Supp. 2d 631, 644 (S.D. W. Va. 2005); *Hanshaw v. Wells Fargo Bank, N.A.*, 2015 WL 5345439, at *17 (S.D. W. Va. Sept. 11, 2015). Defendant's sole basis for dismissing Plaintiff's good faith claim is that its 2012 agreement expressly allows it to assess multiple NSF fees on the same item. *See* ECF No. 8, p. 17. Since Plaintiff has stated a valid breach of contract claim as set forth above, Ms. Noe's claim for breach of the implied covenant must be allowed to proceed. *See Hanshaw*, 2015 WL 5345439, at *17 (because plaintiff "states a claim for an express breach of contract theory of liability – the allegations [] relating to the implied covenant of good faith and fair dealing are similarly sufficient to overcome a motion to dismiss"); *Garcia v. UMB Bank, N.A.*, (denying motion to dismiss breach of covenant of good faith and fair dealing claim involving multiple NSF fees on same item).

Ms. Noe also states a valid claim for unjust enrichment. West Virginia courts have recognized that "under federal law, a plaintiff is permitted to plead unjust enrichment as an alternative to contract recovery 'when the terms of a contract or [the] parties to said contract are disputed.'" *Span Constr. & Eng'g, Inc. v. Uwharrie Builders, LLC*, 2019 WL 1574233, at *2 (N.D. W. Va. Jan. 30, 2019) (quoting *RaceRedi Motorsports, LLC v. Dart Machinery, Ltd.*, 640 F. Supp. 2d 660, 666 (D. Md. 2009)); *see also Rubberlite, Inc. v. Baychar Holdings, LLC*, 737 F. Supp. 2d 575, 584 (S.D. W. Va. 2010) ("The Court agrees with Plaintiffs that under Rule 8 of the Federal

Rules of Civil Procedure they may plead alternative theories"). Given the dispute over what the terms of the contract are, unjust enrichment is a proper claim.

## VI.    Ms. Noe States a Valid Claim Under the Consumer Credit and Protection Act.

Defendant also contends that, because the Bank has a contractual right to charge multiple NSF fees on the same item, Ms. Noe's claim for violations of the West Virginia Consumer Credit and Protection Act ("CCPA") must fail. *See* ECF No. 8, p. 18. As established above, because the 2012 Terms and Conditions have long since been replaced, the Bank has no contractual right to assess multiple NSF fees. Therefore, dismissal of the CCPA claim on the grounds that the Bank's conduct is allowed must fail.

Also unpersuasive is the Bank's argument that "[a]s a matter of law, a depository account, like the checking account in this case, is not a 'consumer good or service' . . . under the [CCPA]." *See* ECF No. 8, p. 19. The cases cited by Defendant in support of this premise are mortgage loan cases, which loans are specifically covered by separate articles of the CCPA that directly address consumer credit (Articles 2, 3 & 4), not consumer bank account cases. Moreover, in a previous overdraft fee case against United Bank, the Circuit Court of Jackson County, West Virginia found that the plaintiff stated a valid claim under Article 6 of the CCPA for the improper assessment of overdraft fees. *See* Order, pp. 4-5, *Jones v. United Bank*, No. 11-C-50 (Jackson County Cir. Ct. Sept. 29, 2011) (Exhibit 3 hereto). Specifically, the court found:

> the issue of whether the WVCCPA encompasses the subject matter set forth in the Complaint presents a close question. Nevertheless, the Court CONCLUDES that the processing and payment of overdraft debit card transactions constitutes "services," as defined by the WVCCPA, and are therefore covered by the WVCCPA. Accordingly, Plaintiff's WVCCPA claim will not be dismissed at this time.

*Id.* Similar findings are warranted here.

## VII.   There Is No Basis to Strike Ms. Noe's Class Allegations.

Finally, City National contends that because Ms. Noe has agreed to arbitrate her claims,

her request for class action relief should be stricken. In light of the fact that the 2016 Terms and Conditions in effect when Ms. Noe was assessed the improper NSF Fees did not require arbitration, Defendant's request to strike the class allegations is improper. As the court noted in *Alig v. Quicken Loans Inc.*, 2015 WL 13636655, at *2-3 (N.D.W. Va. Oct. 15, 2015), motions to strike class allegations are typically premature. According to the court, Rule 23(c)(1) was amended December 1, 2003 to require that "the court must – at an early practicable time – determine by order to certify the action as a class action." *Id.* at *2 (citing Fed. R. Civ. P. 23(c)(1)(A)). According to the Advisory Committee Notes, the "as soon as practicable" language was changed to "at an early practicable time" because class certification decision-making at the pleading stage did not reflect prevailing practice and because "[t]ime may be needed to gather information necessary to make the certification decision." *Id.* (citing Advisory Committee Notes to 2003 Amendments); *see also Gariety v. Grant Thornton LLP*, 368 F.3d 356, 365 (4th Cir. 2004) (citing advisory committee note to 2003 amendments to Rule 23 with approval). According to the district court in *Alig*, Rule 23(c) was amended expressly to "forestall class action decision-making until after the pleadings have closed and the parties have conducted discovery." 2015 WL 13636655, at *2. Thus, City National's pitch to strike Ms. Noe's class allegations at this stage should be rejected.

Also unpersuasive is Defendant's claim that a class could never be certified in this case because of differing contracts and different applicable laws. *See* ECF No. 8, p. 20. Countless overdraft fee cases have been certified as class actions in the past decade where similar arguments have been routinely rejected. *E.g.*, *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 174 (D.S.C. 2018) (certifying nationwide breach of contract class regarding improper overdraft fees with 17 state subclasses to account for differences in state law); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 655 (S.D. Fla. 2015) (certifying nationwide breach of

contract class action against Wells Fargo regarding overdraft fees with three subclasses to account for differences in state law); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 683 (S.D. Fla. 2015) (certifying nationwide breach of contract class action against Wachovia regarding overdraft fees with four subclasses to account for differences in state law). Defendant's claims to the contrary ignore these certification decisions.

This is why, as the *Alig* court noted, that courts consistently deny motions to strike class allegations because class allegations should not be addressed at the pleading stage, before plaintiff has had full opportunity for discovery and to revise the class definition as necessary. 2015 WL 13636655, at *2 (citing *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59-60 (1st Cir. 2013, and explaining that "striking a pleading is a drastic remedy and . . . it is often sought by the movant simply as a dilatory or harassing tactic"); *Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011) ("a court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class"); *Graves v. Southwestern & Pacific Specialty Fin., Inc.*, 2013 WL 5945851, at *2 (N.D. Cal. Nov. 4, 2013) ("motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for arguments pertaining to the class allegations"); *Smith v. Wash. Post. Co.*, 962 F. Supp. 2d 79, 89-90 (D.D.C. 2013) (same). Similar results are warranted here.

## CONCLUSION

Plaintiff's claims are validly pled and Defendant's Motion should be DENIED. Should the Court determine that any of the claims are subject to dismissal, Plaintiff respectfully requests leave to replead such claims pursuant to Federal Rule 15.

Dated: December 16, 2019.

Respectfully submitted,

By:   */s/ Jason E. Causey*
   James G. Bordas III #8518
   Jason E. Causey #9482
   BORDAS & BORDAS, PLLC
   1358 National Road
   Wheeling, WV 26003
   (304)242-8410
   jbordasIII@bordaslaw.com
   jcausey@bordaslaw.com

   G. Franklin Lemond, Jr.*
   WEBB, KLASE & LEMOND, LLC
   1900 The Exchange, S.E.
   Suite 480
   Atlanta, GA 30339
   (770) 444-9594
   Franklin@WebbLLC.com

   Tiffany M. Yiatras*
   Francis J. "Casey" Flynn, Jr.*
   CONSUMER PROTECTION LEGAL, LLC
   308 Hutchinson Road
   Ellisville, MO 63011
   tiffany@consumerprotectionlegal.com
   casey@consumerprotectionlegal.com

   *Attorneys for Plaintiff*

   * Admitted *Pro Hac Vice*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

| |
|---|
| BRENDA C. NOE, on behalf of herself and all others similarly situated, |
| Plaintiff, |
| vs. |
| CITY NATIONAL BANK OF WEST VIRGINIA, |
| Defendant. |

Civil Action No. 3:19-cv-00690

**CERTIFICATE OF SERVICE**

A true and accurate copy of the foregoing has been served on all parties via their counsel of record through the Court's ECF system on this 16th day of December, 2019.

By:   */s/ Jason E. Causey*
James G. Bordas III #8518
Jason E. Causey #9482
BORDAS & BORDAS, PLLC
1358 National Road
Wheeling, WV 26003
(304)242-8410
jbordasIII@bordaslaw.com
jcausey@bordaslaw.com